IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD SNYDER           :
                         :
    v.                   :   CIVIL NO. L-00-585
                         :
DERAND RESOURCES CORP. et al. :
                         :

MEMORANDUM

Now pending is Defendants' Motion for Summary Judgment or Alternatively, To Dismiss the Complaint. Because the defendants have amply demonstrated that plaintiff Richard Snyder's claims are time barred, no hearing is necessary. See Local Rule 105.6 (D. Md. 1999). For the following reasons, the Court shall, by separate Order, GRANT the defendants' Motion and CLOSE the case.

**Background**

On February 29, 2000, Richard Snyder, acting *pro se*, filed a three page Complaint for Monetary Damages against DeRand Resources Corporation and other defendants. Snyder alleges that in late 1988 he purchased for $200,000 a partnership interest in DeRand Texiana Partners III, L.P, an entity created to serve as a tax shelter and to engage in the business of oil and gas exploration in Texas. Snyder's complaint alleges that

the defendants breached a duty of good faith and fair dealing, breached their contract with him, and violated civil RICO by mismanaging the limited partnership.

On April 28, 2000, defendants filed their motion for summary judgment or to dismiss.  In support of their motion, they submitted an extensive memorandum (supported by an affidavit and other documentation) analyzing the factual and legal deficiencies in Snyder's suit.  Among other things, defendants made an overwhelming showing that (i) plaintiff's claims were long since time barred, (ii) that his conclusory and unsupported claims of "mismanagement" were insufficient to state a claim for breach of fiduciary duty, and (iii) that Synder had failed to meet any of the specific pleading requirements to state a civil RICO claim.

Because Snyder was *pro se*, the Clerk of Court (on May 1, 2000) sent Snyder a standard notice that the defendants had filed a potentially dispositive motion and that he was required to oppose it in writing.  On May 17, 2000, Snyder submitted a request for more time to respond to the motion.  The Court granted the motion, and on June 16, 2000, Snyder filed an Opposition to Motion for Summary Judgment/Motion to Dismiss; Leave to File Amended Complaint.

Mr. Snyder's paper is a mere two pages in length and does not begin to address the points made by the defendants. Snyder's only response to defendants' limitations argument is the bare assertion that, "[t]he partnership, although formed in 1988, is an ongoing 'business' and as such cannot be time-barred for allegations of wrong-doing which may have commenced over 10 years ago, but which are continuing to this day."[1]

On July 24, 2000, defendants filed a detailed reply memorandum, which was again supported by an affidavit and documentation. Defendants' papers amply demonstrate that Snyder's claims, however stated, are barred by the applicable statutes of limitations.[2]

### Discussion

Other than the RICO claim, Snyder does not clearly

---

[1] Most of the Snyder's paper is devoted to a request to file an amended complaint transforming the case into a class action, adding unnamed lawyers and accountants as defendants and stating unspecified claims under the securities laws. The motion to amend was facially invalid because, in violation of the Local Rules, no proposed amended complaint was attached. See Local Rule 103.6 (D. Md. 1999). Accordingly Snyder's motion for leave to file an amended complaint will be denied by separate order.

[2] The law cited by the defendants to support their statute of limitations argument is clear and dispositive of this matter. The Court need not, therefore, address the other arguments presented by the defendants.

identify the legal theory upon which he proceeds. Accordingly, defendants set out the various limitations periods applicable to all of Snyder's potential causes of action, as follows: (i) breach of fiduciary duty under Virginia law (one year); fraud (two years), breach of contract (five years), RICO (four years), the Securities Act of 1933 (three years), and the Exchange Act of 1934 (three years).

In their papers, defendants show that Snyder has been on notice of his claims since at least the early 1990s. Supporting defendants' motion are two affidavits signed by David B. Reese, Vice President of DeRand Energy Corporation (the General Managing Partner of the Limited Partnership). Attached to the affidavits are a series of letters that Snyder has sent to defendants since 1990 complaining of waste and mismanagement.

For example, on July 12, 1993, Snyder wrote a letter to his fellow partners stating that the partnership was doomed and that the partners money had "disappeared." Snyder solicited the other partners for contributions to fund an audit of the limited partnership and a lawsuit against DeRand Energy. (David B. Reese Decl. Ex. G) On August 12, 1993, when he had not received enough contributions from the other partners to go

forward, Snyder wrote them another letter stating that "...we are not going to stop pursuing this blatant violation of business activity without a fight." (Reese Decl. Ex. H) During this time Snyder was represented by counsel; his attorney, Alan P. Dye, wrote (unsuccessfully) to the other partners requesting them to sign an authorization form demanding an audit. (Reese Decl. Ex. I)

The Reese affidavits also demonstrate that Snyder's complaints of mismanagement stem from actions that occurred prior to 1995. As would be expected from an oil and gas limited partnership, almost all of the exploration and extraction took place in the early years. The level of partnership distributions dropped from $154,187 in 1990 to $18,242 in 1994 and to zero in 1995. (David B. Reese Suppl. Decl. at 1-4) So, Snyder knew well before 1995 that the partnership would be unprofitable.

Moreover, Snyder's claims of excessive management and professional fees also relate to years before 1995. The management fees paid by the partnership to DeRand Energy were approximately $14,000 per year prior to 1995 but either zero or less than $3,000 per year thereafter. The partnership has never paid more than $5,150 in accounting fees in any given

5

year; since 1995 the fees have never exceeded $4,000 annually. Total legal fees paid by the limited partnership to date are only $14,351.52. (Reese Suppl. Decl.)

In analyzing defendants' limitations defense, two facts are critical. First, the events of which Snyder complains took place more than five years before he brought suit. Second, Snyder has been complaining and threatening to sue since at least as early as 1993. Accordingly, Snyder was on notice of his claims, yet failed to assert them within the limitations period.

In opposing defendants' overwhelming limitations argument, Snyder states briefly and erroneously that the partnership, is an "ongoing business" so that complaints of ongoing mismanagement cannot be time barred. This legal proposition is wrong. If Snyder were correct, then no claim involving the management of an ongoing business enterprise would ever be time barred. The continuing wrong doctrine is inapplicable when the harm is discoverable and where nothing prevented the plaintiff from coming forward to seek redress earlier. See Randolph County Fed. Sav. & Loan Assoc. v. Sutliffe, 775 F.Supp. 1113, 1123 (S.D. Ohio 1991); Crossen v. Bernstein, No. 91 Civ 3501, 1994 WL 281881, at *7 (S.D.N.Y.

June 23, 1994).[3]

There is an additional reason for granting summary judgment. Snyder began this suit by paying the filing fee and submitting a brief complaint. When faced with a strong summary judgment/dismiss motion, he made no serious effort to oppose it. Instead, even after receiving an extra month to organize his legal and factual arguments, Snyder filed a two page opposition that states no facts, fails to cite any law, and fails to address most of defendants' arguments. Snyder is simply not serious about his suit. When faced with a summary judgment motion, a plaintiff (and even a *pro se* plaintiff) may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Accordingly, defendants' motion to dismiss or for summary judgment will be GRANTED and the case DISMISSED with prejudice.

---

[3] Here, not only was the harm discoverable, but Snyder claimed to have discovered it at least as early as 1993. Under these facts, the holding in In re Prudential Ins. Co. of America Sales Practices Litigation, 975 F.Supp. 584, 604 (D.N.J. 1996), which disagreed with Randolph County, is also inapplicable.

## Conclusion

For the reasons given above, this Court shall, by separate Order, (1) GRANT Defendants' Motion for Summary Judgment or Alternatively, to Dismiss the Complaint, and (2) DISMISS this case with prejudice.

Dated this 30TH day of January 2001.

_____
Benson Everett Legg
United States District Judge